# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF KENTUCKY
# BOWLING GREEN DIVISION
# CASE NO. 1:08-CR-00046-R

UNITED STATES OF AMERICA                        PLAINTIFF/APPELLANT

v.

DONNIE HALCOMB                                DEFENDANT/APPELLEE

## MEMORANDUM OPINION

This matter comes before the Court upon the Government's appeal from the August 26, 2008, judgment of Magistrate Judge E. Robert Goebel (DN 21). The parties have briefed the issues (DN 31, DN 32, DN 34) and this matter is now ripe for adjudication. For the reasons that follow, the sentence is VACATED and this case is REMANDED for resentencing.

## BACKGROUND

Defendant Donnie Halcomb is a cattle farmer in Todd County, Kentucky. In 2003, Halcomb began lacing deer carcasses with a restricted use pesticide, Carbofuran, commonly known as "Furadan." He claims that his property was overrun with coyotes that killed his baby calves. Halcomb decided to use the Furadan to poison the coyotes after a "breaking point" when they attacked a pet cow, Birdy, that his children had shown when they were in high school.

According to expert testimony at the sentencing hearing, Furadan is a powerful insecticide that is extremely poisonous to humans. It acts like a nerve toxin, disrupting the connection between the nervous system and muscles, causing the muscles to uncontrollably contract. A human exposed to a lethal dose of Furadan, either by inhalation, ingestion, or skin exposure, would suffocate due to an uncontrollable constriction of the muscles around the rib cage. A lethal dose would typically range between five drops and a half-teaspoon. When placed on an animal in a field, the chemical could remain lethal for several months to a year or more.

Children are especially at risk due to their smaller size and developing nervous systems.

Beginning in 2004, dead animals appeared on the properties of Halcomb's neighbors. At that time, Frank Walton, Halcomb's eastern neighbor, discovered several dead dogs on his property. Kentucky Conservation Officer Jeff Whittinghill responded to the complaint and discovered a deer carcass across the road from Walton's property with several dead racoons and possums around it, as well as a nearby chemical jug. Whittinghill's investigation revealed that one of the dogs tested positive for Furadan. Surrounding neighbors suspected Halcomb was responsible for the poisonings, but Whittinghill did not interview him because he had "no hard evidence."

Bricky Stooksbury, another Halcomb neighbor, starting finding dead animal carcasses, including deer, coyotes, racoons, an opossum, a hawk and several small birds, on the farm adjoining Halcomb's in the spring of 2005. Fish and Wildlife special agent Robert Snow investigated Stooksbury's complaints in March 2006, but the carcasses were deemed too decomposed to submit for testing. In March 2007, Stooksbury found seventeen animal carcasses scattered across his field. Snow returned to investigate and found an additional seven coyotes, a deer and a redtail hawk, all dead. Snow collected tissue samples and returned to Louisville, but on the way received another complaint that a deer carcass had been found. Snow returned two days later and found the deer as well as a dead vulture. The two deer and the vulture tested positive for Furadan.

Snow obtained a search warrant for Halcomb's property and executed it on April 20, 2007. Investigators found four deer carcasses coated with Furadan and an additional twenty-nine animal carcasses. The search also revealed a receipt for Furadan purchased by a third party on

August 5, 2003, six months prior to the first reported poisonings. At that time, Halcomb denied having any knowledge of Furadan or any problems with coyotes killing his calves.

On November 15, 2007, Halcomb was charged with misdemeanor violations of the Federal Insecticide, Fungicide, and Rodenticide Act ("FIFRA"), 7 U.S.C. §§ 136j(a)(2)(G), 136l(b)(1)(B) and the National Migratory Bird Treaty Act ("MBTA"), 16 U.S.C. §§ 703, 707(a). Halcomb pleaded guilty to all counts on April 30, 2008. The magistrate judge set a sentencing hearing for August 20, 2008.

Based on the United States Sentencing Guidelines, the Presentence Investigation Report recommended that a total offense level of twenty applied. This calculation was based on a base offense level of eight, a six level upward adjustment for the conduct being ongoing and continuous, a nine level upward adjustment for the conduct resulting in a "substantial likelihood of death or serious bodily injury," and a three level downward adjustment for acceptance of responsibility. *See* United States Sentencing Guidelines ("USSG") § 2Q1.2(b)(2). A total offense level of twenty resulted in an advisory Guidelines range of thirty-three to forty-one months imprisonment.

At sentencing, the magistrate judge found that the base offense level of eight and the six-level upward adjustment were appropriate. He declined, however, to find that there was a "substantial" likelihood of death or serious bodily injury as a result of Halcomb's actions. He found there was "[c]ertainly . . . a likelihood of death or serious bodily injury" but that it was not "substantial." As a result, the magistrate judge re-calculated Halcomb's total offense level as twelve, after a two-level reduction for acceptance of responsibility. Based on a criminal history category of one, the advisory Guidelines range called for ten to sixteen months imprisonment

and a fine of three thousand to thirty thousand dollars. The magistrate judge then decided to impose a below-Guidelines sentence of sixty months probation with certain special conditions. He also imposed a fine of fifty thousand dollars, exceeding the Guidelines range. The magistrate judge entered judgment on August 26, 2008. The Government appealed the sentence on September 25, 2008.

## STANDARD

The scope of appeal from a magistrate judge's sentence "is the same as in an appeal to the court of appeals from a judgment entered by a district judge." Fed. R. Crim. P. 58(g)(2)(D). The Court of Appeals reviews a district court's sentence to determine if it is unreasonable, applying
an abuse-of-discretion standard. *United States v. Griffin*, 530 F.3d 433, 439 (6th Cir. 2008); *see also Gall v. United States*, 552 U.S. 38, 46 (2007); *United States v. Booker*, 543 U.S. 220, 261 (2005). The court "'first ensure[s] that the district court committed no significant procedural error,' and next 'consider[s] the substantive reasonableness of the sentence imposed under an abuse-of-discretion standard.'" *Griffin*, 530 F.3d at 439 (quoting *Gall*, 552 U.S. at 51).

If a court commits a significant procedural error, the sentence is procedurally unreasonable. *Id.* A court might commit a significant procedural error by "failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence– including an explanation for any deviation from the Guidelines range." *Gall*, 552 U.S. at 51.

Assuming the court's sentencing decision is procedurally sound, "the appellate court

4

should then consider the substantive reasonableness of the sentence imposed under an abuse-of-discretion standard." *Gall*, 552 U.S. at 51. "'A reviewing court will find that a sentence is substantively unreasonable where the district court select[s] the sentence arbitrarily, bas[es] the sentence on impermissible factors, fail[s] to consider pertinent § 3553(a) factors, or giv[es] an unreasonable amount of weight to any pertinent factor.'" *Griffin*, 530 F.3d at 439 (quoting *United States v. Tate*, 516 F.3d 459, 469 (6th Cir. 2008)). A sentence within the Guidelines range is credited "with a rebuttable presumption of substantive reasonableness." *United States v. Wilms*, 495 F.3d 277, 280 (6th Cir. 2007). A presumption of unreasonableness, however, is not applied to a sentence outside of the Guidelines range. *Gall*, 552 U.S. at 51. Regardless of the Guidelines range, the district court must "impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth" by 18 U.S.C. § 3553(a)(2). 18 U.S.C. § 3553(a).

## ANALYSIS

**A.     Right and Timeliness of Appeal**

Halcomb argues that the Government's appeal is prohibited because Federal Rule of Criminal Procedure 58(g)(2) does not address the Government's right to appeal. Alternatively, he contends that if the Government may appeal, they must do so within ten days of entry of judgment. Federal Rule of Criminal Procedure 58(g)(2)(B) provides that "[a] defendant may appeal a magistrate judge's judgment of conviction or sentence to a district judge within 14 days of its entry."[1] The rule does not address the Government's right to appeal.

---

[1] The rule was amended December 1, 2009, and revised the times set at ten days to fourteen days.

As the Government notes, however, an "appeal of an otherwise final sentence imposed by a United States magistrate judge" is treated "as though the appeal were to a court of appeals from a sentence imposed by a district court." 18 U.S.C. § 3742(h). The Federal Rules of Appellate Procedure further explain that "[w]hen the government is entitled to appeal, its notice of appeal must be filed . . . within 30 days after the later of: (i) the entry of the judgment or order being appealed; or (ii) the filing of a notice of appeal by any defendant." The Government may file a notice of appeal for several reasons, including if the sentence "is less than the sentence specified in the applicable guideline range." 18 U.S.C. § 3742(b).

Therefore, the Government properly appealed Halcomb's sentence within thirty days of the magistrate judge's entry of judgment.

**B.      Procedural Reasonableness**

*1.        Improperly Calculating Guideline Range*

The Government argues that the magistrate judge committed a procedural error when he declined to find that Halcomb's conduct "resulted in a substantial likelihood of death or serious bodily injury." USSG § 2Q1.2(b)(2). In explaining his decision, the magistrate judge stated as follows:

> The Court can increase the base offense level by nine if I make a finding that there's a substantial likelihood of death or serious bodily injury. I can't make this finding in all honesty. Certainly there is a likelihood of death or serious bodily injury, you create a risk, I think in the first statement that was made to me by Mr. Ream, where he argued there is potential for great harm. And I do see that.
> But I cannot honestly make a finding here that this rises to the degree of substantial likelihood of death or serious bodily injury. I think if it did I would have heard evidence from some source here today that other poisonings somewhere around this country have resulted in death or serious bodily injury to someone who got mixed up with this substance as a result of this type of animal poisoning going on. I didn't hear anything like that.

6

> We didn't have any death or bodily injury here. And you know, I certainly couldn't make a finding of guilt, you know, if I were asked to make a finding of guilt with respect to that 2004 incident down by Mr. Frank Walton's. But I suspect very strongly that you were involved. And this stuff went on over a period of years in that neighborhood. Luckily no one was hurt.
>
> I just can't make that finding of substantial likelihood of death or serious bodily injury. The word "substantial" in that phrase is causing me the problem.

The Government argues that the magistrate judge improperly placed a burden on the United States to show that some other person had died or had been seriously injured as a result of similar conduct.

The second paragraph of magistrate judge's explanation, however, should not be interpreted to mean that the magistrate judge believed the Government had to show other persons had died or had been seriously injured as a result of actions similar to Halcomb's. Rather, the statement is best interpreted to mean that such evidence might have convinced him that the likelihood of death or serious bodily injury was "substantial." Therefore, the Court does not find that the magistrate judge abused his discretion when declining to adjust Halcomb's sentence upward nine levels. The magistrate judge heard all of the Government's evidence relating to the location of the carcasses, the toxic nature of Furadan, the manner in which it could cause harm, and the children who resided in and visited the area. Considering this evidence, the magistrate judge found that the death or serious bodily injury was likely, but not substantially so. That finding was not unreasonable.

### 2. *Failing to Adequately Explain the Chosen Sentence*

The Government also argues that the magistrate judge erred by not discussing the § 3553(a) sentencing factors. Although the Government objects on substantive reasonableness

grounds, failing to adequately explain the chosen sentence is a question of procedural reasonableness.

A judge does not need to "'engage in a ritualistic incantation' of the § 3553(a) factors,' but its decision should be 'sufficiently detailed to reflect the considerations listed in § 3553(a)' to permit meaningful appellate review." *United States v. Martinez*, 588 F.3d 301, 325 (6th Cir. 2009) (citations omitted). The judge's opinion must reflect a consideration of the § 3553(a) factors. *United States v. Mayberry*, 540 F.3d 506, 518 (6th Cir. 2008).

Speaking to Halcomb, the magistrate judge explained his departure from the sentencing Guidelines as follows:

> When I sentence you here today I'm going to be departing from these guidelines in two instances, okay? I'm going to be dropping– I'm going to be dropping below the guideline level, because I believe it's appropriate here, I'm going to be dropping below the guideline level with respect to the prison sentence. I am not going to sentence you to prison, okay? I'm going to be exceeding, however, these guideline ranges when it comes to the fine in this particular case. You need to be rather severely punished for the behavior that you engaged in in this particular case, Mr. Halcomb. And you're going to receive a severe punishment in this particular situation. . . .
> Having considered Title 18 United States Code Section 3552A and the advisory guidelines which produce a total offense level of twelve and a criminal history category of one, the advisory guideline ranges are ten sixteen-month custody, a fine of three thousand to thirty thousand dollars, and one year supervised release. I believe a reasonable sentence to be sixty months or five years probation and payment of the fine as I've indicated to you. This sentence is a variance sentence, that is, it varies from the sentencing guidelines. However, all things considered here today that I have heard and that I know about this case, I believe it is appropriate, as well as sufficient, but not greater than necessary to comply with the purposes set forth in Title 18 United States Code Section 3553(a)(2).

The magistrate judge did state that he considered the necessary factors and that the sentence was "appropriate," "severe," "reasonable" and "not greater than necessary," but he did not elaborate or explain why he was imposing a variance sentence. At the time of sentencing, a court "is

8

required to 'state in open court the reasons for its imposition of the particular sentence, and, if the sentence' lies outside the applicable Guidelines range, 'the specific reason for the imposition of a sentence different from that described, which reasons must also be stated with specificity in the written order of judgment and commitment.'" *United States v. Grams*, 566 F.3d 683, 686 (6th Cir. 2009) (quoting 18 U.S.C. § 3553(c)(2)); *see also* Fed. R. Crim. P. 32(i)(3)(B). The Court finds that the explanation provided by the magistrate judge at sentencing was not sufficiently detailed to permit meaningful appellate review and better analysis under § 3553(a) is necessary. Therefore, the Court concludes that Halcomb's sentence was not procedurally reasonable.

## CONCLUSION

For the foregoing reasons, the sentence is VACATED and this case is REMANDED for resentencing. An appropriate order shall follow.